UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

THOMAS HENRY LEE BARFELL,

    Plaintiff,

  v.                                              Case No. 13-C-854

WINNEBAGO COUNTY JAIL et al.,

    Defendants.

## SCREENING ORDER

    The plaintiff, Thomas Henry Lee Barfell, filed a *pro se* complaint on July 26, 2013 under 42 U.S.C. § 1983, alleging that his civil rights were violated. At the time the complaint was filed, Barfell was incarcerated at the Winnebago County Jail. The court dismissed Barfell's complaint without prejudice on August 12, 2013 because it failed to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," as required by Federal Rule of Civil Procedure 8(a)(2). (ECF No. 10.) Barfell's initial complaint consisted of eight pages of incoherent allegations against various correctional officers and medical staff at the Winnebago County Jail. (*See* ECF No. 1.) Barfell filed more than 100 pages of exhibits with the initial complaint and filed additional exhibits on August 2, 2013. (ECF No. 1-1; ECF No. 8.)

    Barfell filed an amended complaint on September 23, 2013. (ECF No. 15.) The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief

from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To determine whether Barfell has stated valid claims, the court will consider the content of Barfell's amended complaint as well as the exhibits he filed with his initial complaint and his supplementary filing on August 2, 2013. (*See* ECF No. 1-1; ECF No. 8.) Barfell's amended complaint refers to grievance forms that were attached as exhibits to his initial complaint, and although Civil L. R. 15(a) generally prohibits the practice of incorporating any prior pleading by reference, Barfell's *pro se* status warrants incorporation of his original exhibits in the amended complaint. In addition, these exhibits contain factual information that will help the court assess the merit of Barfell's claims.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.*"* *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

2

*Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Barfell's amended complaint lodges a series of allegations against Winnebago County Jail correctional officers and medical staff. Barfell claims that between May 11, 2013 and August 8, 2013, he was sent to segregation five times and spent a total of thirty-five days in segregation. It is apparent that Barfell violated institutional rules on at least three occasions and was punished for the infractions. Barfell was placed in segregation for one day for possession of contraband (an altered razor), two days for being disrespectful to a correctional officer, six days for again possessing contraband and participating in a disturbance, and an additional six days for throwing a food tray out of his cell. (*See* ECF No. 1-1 at 33-36, 66-67, 74; ECF No. 8 at 7.)

3

Barfell contends that both while in segregation and in the general population, he was denied his First Amendment rights by Sergeant Matthew Weisse, Corporal Melisa Rasmussen, Sergeant April Netzel, and Lieutenant Carrie Kopp. He first contends that while in segregation, he was not permitted to attend church services or Bible study, though he admits he could watch church services on television, and that he met three times with Chaplain Krause for one-on-one Bible study sessions. While it is true that the "right to the free exercise of religious beliefs . . . does not abate upon imprisonment," the right may "be restricted in order to achieve legitimate correctional goals." *Caldwell v. Miller*, 790 F.2d 589, 596 (7th Cir. 1986). A restriction on the privilege to attend church services while confined to disciplinary segregation constitutes a legitimate correctional goal. In addition, Barfell admits that the Jail allowed him to practice his religion in other ways. "All that is required is reasonable accommodation." *See Arsberry v. Sielaff*, 586 F.2d 37, 44 (7th Cir. 1978) (citing *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972)). Barfell states that the Jail provided a chaplain for individual Bible study on several occasions, and his discipline forms indicate that he was granted access to a religious book while confined to segregated status. (*See* ECF No. 1-1 at 33-36, 66-67, 74; ECF No. 8 at 7.) Thus, the Jail reasonably offered Barfell alternative methods of observing his first amendment rights in light of the its legitimate penological objective of discipline. Barfell's claim based on the violation of his rights to religious worship must be dismissed.

Barfell also contends that while in segregation, he was prohibited from sending mail to family and friends. Prison inmates have a First Amendment right both to send and receive mail. *Kaufman v. McCaughtry*, 419 F.3d 678, 685 (7th Cir. 2005). In the case of non-legal outgoing mail, the court must determine whether the censorship furthers "one or more of the substantial governmental interests of security, order, and rehabilitation" and is "no greater than is necessary or

4

essential to the protection of the particular governmental interest involved." *See Procunier v. Martinez*, 416 U.S. 396, 413 (1974); *Koutnik v. Brown*, 456 F.3d 777, 784-86 (7th Cir. 2006) (upholding an outgoing mail restriction on an inmate attempting to send mail containing gang-related symbols and swastikas). Here, it does not appear that any of Barfell's disciplinary violations raised concerns about the contents of his outgoing mail. Instead, the restriction on outgoing mail appears to be a form of discipline. Sergeant Weisse responded to Barfell's grievances concerning his outgoing mail by stating that while on disciplinary segregation, the Jail could "restrict [his] access to certain property for behavioral reasons." (ECF No. 1-1 at 55.) At this stage of the proceedings, the court is unable to conclude that the Jail did not maintain a policy or practice that violated Barfell's First Amendment rights, and therefore he will be allowed to proceed on this claim against Sergeant Weisse, Corporal Rasmussen, Sergeant Netzel, and Lieutenant Kopp.

Barfell next contends that while in segregation, he was on 24 hour lockdown and not permitted "dayroom time." A prisoner's confinement in disciplinary segregation may implicate a liberty interest if the conditions constitute an "atypical and significant hardship." *See Thomas v. Ramos*, 130 F.3d 754, 760 (7th Cir. 1997). In *Thomas*, the Seventh Circuit found that a plaintiff who was confined to segregation for 70 days and not permitted use the dayroom, among other restrictions, did not state a valid due process claim. *Id.* at 760-62. Accordingly, Barfell's claim that he was placed in segregation for as many as 35 days and prohibited from using the dayroom fails to state a claim and will be dismissed.

Barfell additionally contends that Sergeant Weisse, Corporal Rasmussen, Sergeant Netzel, and Lieutenant Koepp denied his requests to receive legal assistance from other inmates. He fails to state a claim on this ground because he does not allege any actual injury as a result of this denial.

5

Furthermore, he does not allege that he was otherwise denied access to legal materials provided by the Jail. *See Lewis v. Casey*, 518 U.S. 343, 351-53 (1996); *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009) (stating that a prisoner's right of access to the courts is violated when "a prisoner is deprived of such access and suffers actual injury as a result"). Accordingly, Barfell's access to the courts claim will be dismissed.

Barfell next alleges that he was treated more harshly than similarly situated inmates at the Jail. He claims he complained to Sergeant Weisse, Corporal Rasmussen, Sergeant Netzel, Lieutenant Koepp, and Lieutenant Cianciolo that unlike male inmates placed in segregation, female inmates placed in segregation were allowed to watch television and could ask other inmates to bring them pens and send mail or make phone calls on their behalf. The essential mandate of the Equal Protection clause is that "all persons similarly situated should be treated alike," *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985), and "a policy that expressly discriminates on the basis of gender must carry the burden of showing an exceedingly persuasive justification for the differing treatment." *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1274 (7th Cir. 1983) (citing *Mississippi University for Woman v. Hogan*, 458 U.S. 718 (1982). Here, the fact that female inmates needed to ask other inmates to perform tasks for them suggests that the Jail did not have a policy granting greater mail or telephone privileges to females in segregation. In addition, the fact that only female inmates were allowed to watch television does not state a constitutional claim. The Equal Protection clause does not protect prisoners from trivial differences in treatment between males and females. *See Betts v. McCaughtry*, 827 F. Supp. 1400, 1406 (W.D. Wis. 1993), *aff'd*, 19 F.3d 21 (7th Cir. 1994) (finding that the grooming privileges for male and female inmates were "in parity," and "the minor differences that exist are not of constitutional significance"). Similarly here,

6

even if female inmates in segregation could watch television and male inmates could not, that difference is not significant enough to implicate the Equal Protection clause. Therefore, Barfell's claim on this ground will be dismissed. Barfell also claims that while he was a medium security inmate, he received fewer privileges than other medium security inmates at the Jail. Since Barfell does not identify what privileges he was denied, when he was denied them, or by whom, this allegation is too vague to state a claim and will also be dismissed.

Finally, Barfell makes a number of complaints against the Jail's medical staff. Barfell alleges that the medical staff failed to properly treat his tooth and jaw pain and improperly denied his requests for an inhaler for his asthma, a special diet for his food allergies, and a test for sexually transmitted diseases. It is unclear from the complaint whether Barfell is a pretrial detainee or a prisoner serving a sentence for a crime. Regardless, it is well-established that deliberate indifference to the serious medical needs of a person held in custody violates his or her constitutional rights. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 764 (7th Cir. 2002). Deliberate indifference requires more than negligence; it requires that the official know of, yet disregard, an excessive risk to the inmate's health or safety. *Farmer*, 511 U.S. at 835, 837. Subjective knowledge of the risk is required: "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 838. Prisoners are entitled only to adequate medical care, not to the specific treatment they prefer. *See Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006).

Barfell alleges that he had tooth and jaw pain for a prolonged period of time and that he was not permitted to see a dentist until he suffered two serious infections. It is evident that Barfell was

7

treated with a regimen of Ibuprofen and salt water, but without further development of the factual record, I cannot say that his claim is without merit. Similarly, Barfell claims he suffered asthma attacks but was denied an inhaler and told to stop exercising if exercise bothered his asthma. It appears that Barfell does have a history of asthma, and at this stage of the proceedings, I cannot determine that his claim is without merit. Barfell will be allowed to proceed on these deliberate indifference claims against the medical staff members who are named in the amended complaint and are alleged to have ignored his medical needs: Nurse Berry, Nurse Mike, Nurse Mary, Patti O'Decker, Doctor Finnegan, and Jane Doe, a doctor who no longer works at the Winnebago County Jail. Barfell does not claim that he suffered harm from the medical staff's refusal to provide him a special diet or from the staff's refusal to test him for sexually transmitted diseases. Moreover, it appears that Barfell is on a waiting list for a free HIV test. (*See* ECF No. 1-1 at 55.) Thus, he has failed to state a claim on these additional grounds.

In sum, Barfell may proceed on his First Amendment claim against Sergeant Weisse, Corporal Rasmussen, Sergeant Netzel, and Lieutenant Koepp based on the denial of outgoing mail privileges, as well as his deliberate indifference claim against Nurse Berry, Nurse Mike, Nurse Mary, Patti O'Decker, Doctor Finnegan, and Jane Doe for failure to treat his asthma and tooth and jaw pain. The remaining defendants will be dismissed.

**ORDER**

**IT IS ORDERED** that the United States Marshal shall serve a copy of the complaint and this order upon Matthew Weisse, Melisa Rasmussen, April Netzel, Carrie Koepp**,** Nurse Berry, Nurse Mike, Nurse Mary, Patti O'Decker, Doctor Finnegan, and Jane Doe pursuant to Federal Rule

of Civil Procedure 4. The plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). Although Congress requires the court to order service by the U.S. Marshals Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service.

**IT IS FURTHER ORDERED** that plaintiff's claims against the Winnebago County Jail, Jeff Meyer, Carolyn Furman, and Lieutenant Cianciolo are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) for failure to state a claim upon which relief may be granted.

**IT IS ALSO ORDERED** that the defendants shall file a responsive pleading to the complaint.

**IT IS FURTHER ORDERED** that the Winnebago County Sheriff or his designee shall collect from the plaintiff's prison trust account the $350 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

**IT IS ALSO ORDERED** that copies of this order be sent to the Winnebago County Sheriff, the Winnebago County Corporate Counsel, and to Corey F. Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

**IT IS FURTHER ORDERED** that the plaintiff shall submit all correspondence and legal

9

material to:

>Honorable William C. Griesbach
>c/o Office of the Clerk
>United States District Court - WIED
>United States Courthouse
>125 S. Jefferson St., Suite 102
>Green Bay, Wisconsin 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Plaintiff is hereby notified that copies of future documents filed with the court that can be scanned and electronically filed need not be served on the other parties. Copies of documents that the clerk advises cannot be electronically scanned, however, must be provided to the opposing parties or their attorney pursuant to Fed. R. Civ. P. 5(a). Plaintiff should also retain a personal copy of each document.

The plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Green Bay, Wisconsin, this ___21st___ day of October, 2013.

>  s/ William C. Griesbach
>  William C. Griesbach, Chief Judge
>  United States District Court

10

Case 1:13-cv-00854-WCG   Filed 10/21/13   Page 10 of 10   Document 17