UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

THOMAS H. L. BARFELL,

    Plaintiff,

Case No. 13-CV-854

MATTHEW WEISSE, MELISA RASMUSSEN,
SGT. APRIL NETZEL, NURSE CAROLYN FURMAN,
MICHAEL GLAESER, BERRY HOERNKE,
PATTI O'DECKER, THOMAS FINNEGAN, M.D.,
MARY SEIDEL, and JANE DOE,

    Defendants.

**ORDER**

Plaintiff, Thomas H. L. Barfell, is proceeding *pro se* under 42 U.S.C. § 1983 on claims that his civil rights were violated while he was incarcerated at the Winnebago County Jail. Barfell's claims include a First Amendment claim that his outgoing mail was restricted while he was in disciplinary segregation and a Fourteenth Amendment medical care claim regarding the treatment he received for asthma. Now before me are the plaintiff's motion for summary judgment, a motion for summary judgment by the Winnebago County Jail defendants, and a motion for summary judgment by the medical defendants.

**I. BACKGROUND**

**A. Parties**

Barfell was incarcerated at the Winnebago County Jail (the Jail) at all times relevant to his complaint. He was at the Jail for imposed extended supervision sanctions.

Defendants Matthew Weisse, Melissa Rasmussen, April Netzel, and Patti DeDecker (previously misidentified as Patty O'Decker[1]) are all employees at the Jail. They will be referred to collectively as the Jail defendants.

Defendants Michael Glaeser, Berry Hoernke, Mary Seidel, Thomas Finnegan, and Carol Furman are all employed by Correctional Health Care Companies, Inc. Each of these defendants worked in the Health Services Unit (HSU) at the Jail. They will be referred to collectively as the medical defendants.

According to Barfell, the Jail defendants denied him outgoing mail privileges while he was in disciplinary segregation and the medical defendants failed to treat Barfell's asthma while he was incarcerated at the Jail.

**B. Outgoing Mail**

Barfell contends that while in segregation, he was prohibited from sending mail to family and friends. The Jail maintained a Mail Transaction History (History) for Barfell from May 13, 2013, to September 23, 2013, which includes the time periods Barfell was in disciplinary segregation. The third column on the History shows that the outgoing mail was approved each time. If any mail was not approved and did not go out, this would be noted in the mail transaction history. During his time at the Jail, Barfell sent 62 pieces of outgoing mail and received 26 pieces of incoming mail. The History for Barfell indicates that all mail Barfell wanted sent out was indeed sent out. With one notable exception, Barfell never went more than five or six days between

---

[1] The Clerk is directed to correct the docket to reflect the defendant previously listed as Patty O'Decker is in fact Patty DeDecker (*see* ECF No. [90] Affidavit of Patty DeDecker.

2

outgoing mail. However, he sent no outgoing mail between August 7, 2013, and September 8, 2013.

According to Barfell, if he placed mail to be sent out when he was in segregation, it would be returned to him immediately, or ignored and not taken. Barfell acknowledges that he did not name the deputies who returned or ignored his mail as defendants because they have no control over the matter. He claims, however, that the Jail defendants in essence enforced the policy. In response to his repeated complaints, Barfell asserts that these defendants informed him that under Jail policy, he could not send out non-legal mail while in segregation. (ECF No. 105 at 2.) Barfell further acknowledges that, on most occasions, he did not even attempt to send mail. At least twice, Barfell was able to persuade a deputy to collect and send outgoing mail while he was in disciplinary segregation.

Defendants Weisse, Netzel, Rasmussen, and former defendant Koepp each aver that they did not deny Barfell outgoing mail, even when he was in disciplinary segregation. They do not deny Barfell's allegation that they told him his mail would be restricted while he was in segregation. Barfell asked in a request form why he was not allowed to send mail in segregation. Barfell also asked for a grievance, but he was not given a grievance form for mail issues, even though he received grievances for other issues. At various times, Barfell received responses that included that the issue had already been addressed, that Barfell was not allowed to send out mail in segregation, to refer to page three of the Handbook, and that the issue is not grievable because it relates to a Jail policy.

Plaintiff filed numerous complaints while he was incarcerated at the Jail. Defendant Sergeant Matthew Weisse sent correspondence to Barfell dated June 12, 2013, that addressed many

3

of Barfell's complaints. According to Sgt. Weisse, the correspondence indicates that the Jail can restrict access to certain property for behavioral reasons, implying that the Jail could deny Barfell the ability to write letters to family members. It is Sgt. Weisse's understanding that the Jail is in the process of clarifying the policies and making it clear that outgoing mail will be allowed even while on disciplinary segregation.

Additionally, indigent inmates at the Jail may request indigent writing materials. The Jail records show that at no time was Barfell denied writing materials to correspond with family and friends. Once again, Barfell avers that indigent writing materials are not offered in segregation so there are no records of Barfell being denied those materials. Barfell signed up every time he could (when he was not in segregation), but he did not sign up when he was in segregation because he was unable to do so.

**C. Asthma**

On May 10, 2013, Barfell told a deputy that he had asthma during a screening for serious medical conditions.

Later in May, Nurse Glaeser performed Barfell's initial health assessment. Barfell told Nurse Glaeser that he had no current complaints or chronic diseases, including no pulmonary problems. Barfell notes that there was no box to check for asthma on the health assessment sheet. On examination, Barfell's vitals were all within normal limits. He did not display trouble breathing or asthmatic symptoms. Nurse Glaeser submits that Barfell did not tell her that he was diagnosed with asthma or needed an inhaler for asthma. Barfell avers that he told Glaeser about his history of asthma, but that she may have disregarded his statements.

On June 9, 2013, Barfell complained of trouble breathing in an inmate health service request form. In the form, Barfell complained that he had been having trouble breaching all day and was not given any remedy. An LPN saw Barfell the same day. A form completed during his examination indicates in the subjective category that Barfell he was not currently short of breath, that his symptoms were at rest and that he did not have a history of asthma or chronic obstructive pulmonary disease (COPD). Barfell also indicated that the symptoms did not represent a recurring problem and did not make it difficult to take a deep breath. Barfell asserts that Nurse Troy filled out the form for him. During the assessment, the LPN noted on the form that Barfell's lungs were clear and his heart was regular. In the assessment section of the form, the LPN wrote: "[Inmate] stated he no longer has any [shortness of breath]. He does not want an inhaler at this time. He will inform C.O. if symptoms return." (Furman Decl. ¶¶ 11-12, Ex. 2).

According to Barfell, his trouble breathing stopped during the thirty minute time lapse between the call and Barfell's visit with the LPN. The LPN told Barfell that an inhaler would be $41.00 and that Barfell would need to see the doctor to get a prescription. Before proceeding with that course of action, Barfell wanted to see if he could have someone drop off an inhaler for him at the Jail. When Barfell learned that was not possible, he began trying to get an inhaler through the HSU.

On June 11, 2013, Nurse Practitioner Ketdam Souvannarath saw Barfell based on a prior submitted request for health care that complained of multiple issues. The nurse practitioner noted that, on examination, Barfell's lungs were clear to auscultation bilaterally and there were no wheezes, no ronchi, and no rales. The nurse practitioner further noted that Barfell had good breath sounds through both lobes. Based on her examination of Barfell, the nurse practitioner concluded,

5

"Albuterol is not medically necessary at this time." (Furman Decl., ¶ 14-15, Ex. 3). She educated Barfell on deep breathing and relaxation techniques and recorded that he should return to the HSU as necessary.

Later that day, Barfell wrote another inmate health services request form complaining that he was denied an inhaler by the doctor despite being "diagnosed with asthma on the streets." (Furman Decl., ¶¶ 16-17, Ex. 4).

On June 19, 2013, Barfell submitted another inmate health services request form regarding, in part, asthma. Barfell wrote, "My asthma continues to bother me. I have not yet been given an inhaler. I am diagnosed with asthma on the streets." (Furman Decl., ¶¶ 18-19, Ex. 5). Again on June 24, 2013, Barfell wrote, "I have been diagnosed with Asthma since I was in 4th grade. It's been bothering me lately and I need an inhaler." (*Id.* at ¶¶ 20-21, Ex. 6.)

Nurse Furman was the Health Service Administrator at the Jail. Her responsibilities included responding to written inmate health service requests, performing nursing assessments of inmates, managing medications, maintaining medical records, and scheduling appointments for inmates to see the Jail physician.

On or prior to June 25, 2013, Nurse Furman had obtained and reviewed Barfell's prior medical records and determined that he had no previous diagnosis of asthma. She responded to both of Barfell's service request forms on June 25, 2013. She wrote on the bottom of Barfell's second service request form that there was "no diagnosis" of asthma. She also clarified that although Barfell was given an inhaler in February 2012, it was for bronchitis, not asthma. Nurse Furman placed Barfell on the list to see the Jail doctor during his next on-site visit.

Barfell also saw Nurse Mary, Nurse Mike, and Nurse Berry during medication distribution between June 11, 2013, and July 2, 2013. One day, Barfell showed Nurse Mary copies of his medical records. She said she would get Barfell an inhaler, but it was never done. On another day, Barfell asked to see Nurse Mike, but he said Barfell would have to wait until medication distribution. At that time, Nurse Mike said, "I can't help you because it's up to the doctor." (Pl's Opp'n to Medical Defs' Mot. for Summ. J., p. 3, ECF 106).

Defendant Dr. Thomas Finnegan examined Barfell on July 2, 2013, and completed a medical progress note regarding the examination. Barfell told Dr. Finnegan that he previously used an inhaler and wanted it again. Dr. Finnegan reviewed prior prison records and noted, "there is no record of inhaler. Took inhaler once for bronchitis." (Furman Decl., ¶¶ 7-8, Ex. 1). Dr. Finnegan recorded that Barfell said he has "asthma due to exercise" and "when he stops it goes away." *Id.* On examination, Barfell's lungs were clear, with no wheezes or rales. Dr. Finnegan diagnosed Barfell with exercise induced asthma and told him to decrease his exercise routine. Dr. Finnegan did not provide an inhaler to Barfell because he did not believe it was warranted. All of Barfell's vital signs were within normal limits.

Barfell submitted an inmate health services request form on July 15, 2013. He asked for copies of all records regarding his asthma. Nurse Furman responded the next day and advised Barfell that he was on the list to see the doctor. Barfell did not submit any further service request forms complaining of symptoms of asthma.

Dr. Finnegan also examined Barfell on July 16, 2013. The appointment focused on tooth pain, but Barfell also told Dr. Finnegan that he was having no trouble breathing at that time. Once again, Barfell's lungs were clear with no wheezes. Dr. Finnegan did not provide an inhaler. Dr.

Finnegan discussed the signs and symptoms of asthma with Barfell and told him to notify HSU if those symptoms developed.

Barfell decided it was unnecessary to keep wasting his time because it was obvious to him that an inhaler would not be provided. Barfell decided to deal with his breathing issues since his release date, August 8, 2013, was coming soon.

There is a note in Barfell's medical records that on August 2, 2013, he went to the pod and complained of shortness of breath. The medical professional who responded observed Barfell standing in his door laughing and yelling at others in the pod, with no noticeable shortness of breath.

## II. ANALYSIS

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an

adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

**B. Plaintiff's Motion for Summary Judgment**

On August 21, 2014, Barfell filed a document he captioned, "Motion for Summary Judgment continued. Refer to previously submitted summary judgment." (ECF No. 78). Barfell attempted to make the document a sworn declaration under 28 U.S.C. § 1746. However, instead of the language from the statute, he said, "I hereby conclude that all of the above information is true and accurate to the best of my knowledge, under the penalty of perjury." (ECF No. 78). While the language is slightly different from § 1746, I will assume that Barfell's intent was to make this a sworn document, not to avoid making it sworn by taking out personal knowledge and adding qualifying statements.

Nevertheless, Barfell's motion is insufficient to entitle him to judgment as a matter of law under Federal Rule of Civil Procedure 56(a). The two page document contains some factual assertions and some argument. It does not comply with Civil Local Rule 56(b), and it does not establish that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. I will consider Barfell's motion for summary judgment and related documents as part of his opposition to defendants' motions for summary judgment.

**C. Outgoing Mail**

The Jail defendants submit that they are entitled to summary judgment on plaintiff's claim that he was not allowed to send outgoing mail while he was in disciplinary segregation. The Jail

9

defendants' primary argument is that dismissal is proper because there is no evidence that any of Barfell's mail was disapproved during the relevant time period. In the alternative, the Jail defendants argue that they are entitled to qualified immunity.

Barfell maintains that the Jail had a policy of depriving inmates in disciplinary segregation of outgoing mail (with the exception of legal mail). As evidence of the policy, Barfell cites the Jail Handbook, which has not been produced, his request forms and grievances, and the fact that there is no indigent sign up for writing materials in segregation. Barfell argues that the Jail's policy of not allowing inmates in disciplinary segregation to send outgoing mail violated his First Amendment rights. Barfell also submits that the defendants are not entitled to qualified immunity on this claim because inmates have a constitutional right to use the federal mail system.

It is true that, as a general matter, prison inmates have a constitutional right to use the mails. *Kaufman v. McCaughtry*, 419 F.3d 678, 685 (7th Cir. 2005). But that right is not unlimited. "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285 (1948). In *Procunier v. Martinez*, the Supreme Court held that prison officials may limit inmates' outgoing mail if doing so furthers "one or more of the substantial governmental interests of security, order, and rehabilitation" and is "no greater than is necessary or essential to the protection of the particular governmental interest involved." 416 U.S. 396, 413 (1974); *see also Koutnik v. Brown*, 456 F.3d 777, 784–86 (7th Cir. 2006) (upholding an outgoing mail restriction on an inmate attempting to send mail containing gang-related symbols and swastikas). In so ruling, however, the Court left open the question whether prison officials could withhold an inmate's mail as a temporary disciplinary sanction. *Procunier*, 416 U.S. at 412 n. 12 ("We need not and do not

address in this case the validity of a temporary prohibition of an inmate's personal correspondence as a disciplinary sanction (usually as part of the regimen of solitary confinement) for violation of prison rules."). That is the issue here.

At least two circuits that have considered the question since *Procunier* have held that temporary restrictions on inmate mail as part of a disciplinary sanction do not violate the First Amendment. In *Little v. Norris*, the Eighth Circuit held that a prison policy denying an inmate the right to receive or send personal correspondence during thirty days in punitive isolation did not violate his constitutional rights:

> The purpose of withholding personal mail is to make punitive isolation unpleasant, and thereby discourage improper behavior and promote security within the prison. Because the disciplinary sanction serves a valid purpose, and because thirty days is not an excessive length of time, .... we do not believe the sanction is unconstitutional.

787 F.2d 1241, 1243–44 (8th Cir. 1986); *see also Leonard v. Norris*, 797 F.2d 683 (8th Cir. 1986); *Gregory v. Auger*, 768 F.2d 287 (8th Cir.), cert. denied, 474 U.S. 1035 (1985). The First Circuit reached the same conclusion in an unpublished decision. *Dupont v. Dubois*, No. 96–1459, 1996 WL 649340, * 1 (1st Cir. Nov. 6, 1996) ("Because the withholding of mail was reasonably related to legitimate penological interests and the restriction on outgoing mail furthered a substantial governmental interest unrelated to the suppression of expression and was no greater than necessary, we find no constitutional violation.").

Although it does not appear that any of the other circuits have directly addressed the issue of whether mail privileges can be temporarily suspended as a form of discipline, several circuits, including the Seventh, have held that temporary and sporadic delays in delivering or sending a prisoner's mail does not state a claim under the First Amendment. *See, e.g., Zimmerman v. Tribble*,

11

226 F.3d 568, 572–73 (7th Cir. 2000) (concluding that an alleged delay in delivering mail on one occasion failed to state First Amendment claim); *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999) (concluding that allegations of "relatively short-term and sporadic" delays in delivering mail failed to state First Amendment claim); *Ahlers v. Rabinowitz*, 684 F.3d 53, 64–65 (2d Cir. 2012) (concluding that eleven instances of delayed or withheld mail over four months did not state First Amendment claim); *DeLeon v. Doe*, 361 F.3d 93, 94 (2d Cir. 2004) (concluding that prison staff's loss of letter containing birthday card did not state a First Amendment claim).

Based on the foregoing, I conclude that the Jail defendants are entitled to summary judgment on Barfell's claim against them. Although it is not clear how long Barfell was in segregation, the record shows that he sent out more than 60 items of mail during the entire four month period of time within which his time in segregation occurred. He also received 26 pieces of incoming mail. (ECF No. 91-1 at 1-4.) The longest period he went without either incoming or outgoing mail was for a one-month period between August 7 and September 9, 2013. Moreover, there is no claim that he was denied the opportunity while in segregation to send or receive legal mail. Given the temporary nature of the sanction and the Jail's need to maintain order and discourage disruptive behavior, I conclude Barfell's rights were not violated.

This is not to say that the court approves of such a policy. As the Eighth Circuit suggested in *Little*, "[jail] authorities may wish to consider allowing an inmate to receive legal, religious, and at least some personal mail while he is serving punitive isolation time." 787 F.2d at 1244. But their failure to do so under the circumstances of this case for the brief time at issue does not amount to a constitutional violation. As *Procunier* recognized, those charged with maintaining security and order in a correctional facility need not show with certainty that adverse consequences would flow

from the failure to censor a particular letter. "Some latitude in anticipating the probable consequences of allowing certain speech in a prison environment is essential to the proper discharge of an administrator's duty." 416 U.S. at 414. Granting that latitude here, I conclude no violation can be shown.

Alternatively, I conclude that the Jail defendants in their individual capacities are entitled to summary judgment under the doctrine of qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). The doctrine balances "two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* In order to defeat a properly raised qualified immunity defense, the plaintiff must establish two things: "first, that the facts alleged describe a violation of a protected right; and second, that this right was clearly established at the time of the defendant's alleged misconduct." *Mordi v. Zeigler*, 770 F.3d 1161, 1164 (7th Cir. 2014).

For the reasons set forth above, I conclude that the Barfell's First Amendment rights were not violated by the temporary disruption of his right to receive and send mail while he was in segregation. But even if I had concluded otherwise, the Jail defendants would be immune from personal liability because the right to receive and send mail while in disciplinary segregation was not clearly established at the time of their alleged misconduct. Indeed, based on the cases cited above, it would appear that the rule is to the contrary. Accordingly, for this reason as well, summary judgment will be granted to the Jail defendants.

**D. Asthma**

The medical defendants argue that they are entitled to summary judgment on plaintiff's medical care claim regarding the treatment of his asthma. They maintain that Barfell's asthma was not a serious medical need and, even if it was, that none of them were deliberately indifferent to Barfell's asthma.

Barfell acknowledges that defendants determined he did not need an inhaler, but he notes that they did not perform a pulmonary lung function test. He also believes and argues that the only treatment for asthma is an inhaler, but he does not have medical evidence to support his assertion.

Although the Jail defendants provided evidence that Barfell was in the Jail for an extended supervision violation, the medical defendants assert that Barfell was a pretrial detainee and analyze his claims under the Fourteenth Amendment. This dispute is not material since the Eighth Amendment standards are often used when considering a pretrial detainee's claim of inadequate medical care. *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 764 (7th Cir. 2002) (citations omitted). Due process rights are at least as great as the protections afforded a convicted prisoner under the Eighth Amendment. *Id.* I will consider plaintiff's medical care claim under both the Fourteenth Amendment and the Eighth Amendment.

A deliberate indifference claim requires both an objectively serious risk of harm and a subjectively culpable state of mind. *Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). A deliberate indifference claim based on inadequate medical treatment requires, to satisfy the objective element, a medical condition "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Edwards*,

14

478 F.3d at 830 (quoting *Greeno*, 414 F.3d at 653). The subjective component of a deliberate indifference claim requires that the prison official knew of "a substantial risk of harm to the inmate and disregarded the risk." *Greeno*, 414 F.3d at 653 (citing *Farmer*, 511 U.S. at 834). Mere medical malpractice or a disagreement with a doctor's medical judgment is not deliberate indifference. *Edwards*, 478 F.3d at 830-31 (citing *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Greeno*, 414 F.3d at 653; *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996)). Yet, a plaintiff's receipt of some medical care does not automatically defeat a claim of deliberate indifference if a fact finder could infer the treatment was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate" a medical condition. *Id.* (citing *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)).

It is not clear from the record that Barfell's asthma constituted a serious medical need, since it was not diagnosed by Dr. Finnegan as mandating treatment. Nevertheless, for the purposes of summary judgment, I will assume that Barfell's asthma was a serious medical need.

Next, I must consider whether the medical defendants were deliberately indifferent to that serious medical need. They were not. Barfell was examined by Nurse Glaeser on May 13, 2013, an LPN on June 9, 2013, Nurse Practitioner Ketdam Souvannarath on June 11, 2013, and Dr. Finnegan on July 2, 2013, and July 16, 2015. Barfell also had contact with other medical professionals during medication distribution and in response to complaints of shortness of breath. None of these medical professionals observed trouble breathing or found asthmatic symptoms.

Barfell's concerns about his breathing were addressed each time he raised them, but medical professionals concluded each time that an inhaler was not medically necessary. On June 11, 2013, Nurse Practitioner Souvannarath concluded, "Albuterol is not medically necessary at this time."

15

(Furman Decl., ¶ 14-15, Exhibit 3). Dr. Finnegan noted after reviewing prior prison records, "there is no record of inhaler. Took inhaler once for bronchitis." (Furman Decl., ¶¶ 7-8, Ex. 1). Dr. Finnegan did not provide an inhaler to Barfell on July 2, 2013, because he did not believe it was warranted. Dr. Finnegan reached the same conclusion on July 16, 2013, when Barfell's lungs were once again clear with no wheezes. The court defers to a medical professional's treatment decisions "unless 'no minimally competent professional would have so responded under those circumstances.'" *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008) (quoting *Collignon v. Milwaukee County*, 163 F.3d 982, 988 (7th Cir. 1998)); *see Jackson v. Kotter*, 541 F.3d 688, 698 (7th Cir. 2008).

A previous diagnosis does not require the medical defendants to treat Barfell in a particular manner. This is especially true since Nurse Furman and Dr. Finnegan obtained and reviewed Barfell's prior medical records and still concluded that no inhaler was necessary. To the extent there are disputes of fact between the parties, they are not material.

Ultimately, Barfell disagrees with the decisions made by the medical defendants. But disagreement with medical professionals about treatment needs does not state a cognizable Eighth Amendment claim under the deliberate indifference standard of *Estelle v. Gamble*, 429 U.S. 97 (1976). *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003). The medical defendants are entitled to summary judgment.

In his response to the medical defendants' motion for summary judgment, Barfell seeks to amend the complaint to identify Nurse Practitioner Ketdam Souvannarath as the Jane Doe he named in his complaint. It is too late for Barfell to substitute parties. In any event, even if I allowed Barfell to substitute this individual for the Jane Doe named in the complaint, it would not change the outcome of Barfell's claim.

Additionally, Jail defendant Patti DeDecker was named in Barfell's medical care claim. However, Barfell has dismissed his claim against DeDecker for lack of evidence. (ECF No. 104, ¶ 12).

## CONCLUSION

**THEREFORE, IT IS ORDERED** that the plaintiff's motion for summary judgment (ECF No. 78) is **denied**.

**IT IS FURTHER ORDERED** that the motion for summary judgment filed by defendants Netzel, Rasmussen, and Weisse (ECF No. 85) is **granted**.

**IT IS FURTHER ORDERED** that the motion for summary judgment by defendants Finnegan, Furman, Glaeser, Hoernke, and Seidel (ECF No. 93) is **granted**.

**IT IS FURTHER ORDERED** that all claims against defendant Patti DeDecker are **dismissed**. The Clerk is directed to enter judgment accordingly.

Dated this __26th__ day of March, 2015.

> s/ William C. Griesbach
> William C. Griesbach, Chief Judge
> United States District Judge